UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ATRIUM COMPANIES, INC.,                            :

                        Plaintiff,               :        09 Civ. 8265 (GBD) (DF)

     -against-                                   :        **REPORT AND
                                                                    RECOMMENDATION**

UNITE HERE! and SOUTHWEST REGIONAL      :
JOINT BOARD, WORKERS UNITED, an
affiliate of Service Employees International Union,  :

                    Defendants.               :
---------------------------------------------------------------X

**TO THE HONORABLE GEORGE B. DANIELS, U.S.D.J.:**

       Before the Court in this interpleader action are two motions for attorneys' fees and costs,

one filed by plaintiff Atrium Companies, Inc. ("Atrium") (Dkt. 43) and one filed jointly by

defendants UNITE HERE! ("Unite Here") and Southwest Regional Joint Board, Workers

United, an affiliate of Service Employees International Union ("SWRJB") (together,

"Defendants") (Dkt. 38).  Atrium seeks an award of $61,958.07 for the attorneys' fees and costs

it incurred in prosecuting its interpleader action, from April 2009, when it commenced an

interpleader proceeding in Texas state court, through February 2010, when, after the case was

removed to federal court and then transferred here, Atrium deposited the interpleaded funds to

this Court's register.  Defendants, pursuant to 28 U.S.C. § 1927 and the Court's inherent

authority, seek a sanctions award of $56,089.42 for attorneys' fees and costs incurred as a result

of Atrium's pursuit of issues allegedly outside the scope of the interpleader claim, after the

interpleaded funds had been deposited with this Court.  For the following reasons, I recommend

that Atrium's motion be granted, and that it be awarded attorneys' fees and costs in the amount

of $57,363.03.  I further recommend that Defendants' sanctions motion be denied.

## BACKGROUND

### A.      Interpleader in Texas State Court

In 2004, labor unions UNITE and HERE merged to become Unite Here.  (Petition in Interpleader (Ex. A-3 to Notice of Removal, dated May 28, 2009 (docketed herein as Dkt. 1 (Doc. 1)[1]), at ¶ 9.)  In 2007, Atrium, a manufacturer, through its Texas-based division, entered into collective bargaining agreements with Unite Here, Locals 2629/31/32 and 2630.  (*Id.* at ¶ 8.) The collective bargaining agreements required Atrium to deduct union dues and initiation fees from the wages of its employees and to transmit these funds to an official of the union.  (*Id.* at ¶ 22.)  An internal dispute within Unite Here's Governing Executive Board arose, and, by January and February 2009, the disputing factions had filed federal claims against each other. (*Id.* at ¶¶ 11, 12, 14.)

On April 14, 2009, Atrium filed an interpleader action in the 162nd District Court of Dallas County, Texas.  (*See generally id.*)  Atrium allegedly faced "rival claims by UNITE HERE and the SWRJB to entitlement to the union dues and initiation fees [Atrium] deduct[ed] from its employees' wages."  (*Id.* at ¶ 23.)  Atrium claimed that it had "no interest of its own in the funds and ha[d] been and remain[ed] willing to deliver these funds to the union entitled to them."  (*Id.*)  Atrium made "an unconditional tender of the disputed funds into the registry of the Court."  (*Id.*)

---

[1] When the case was transferred here, 26 documents that had been docketed in the Northern District of Texas were broken down into smaller segments and docketed in this Court as Docket 1 (Docs. 1-61).

**B.**  **Removal to the Northern District of Texas and Motions to Dismiss**

Unite Here removed the interpleader action to the United States District Court for the Northern District of Texas on May 28, 2009, based on federal-question jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 185(a).  (*See* Notice of Removal.)  On June 10, 2009, Unite Here moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) and for failure to exhaust the non-judicial remedy of arbitration.  (Defendant Unite Here!'s Motion to Dismiss, dated June 10, 2009 (Dkt. 1) (Doc. 4).)

On June 29, 2009, Atrium filed an Amended Complaint for Interpleader.  (First Amended Complaint for Interpleader, dated June 29, 2009 (Dkt. 1) (Doc. 7).)  Unite Here then moved to dismiss the Amended Complaint.  (Motion to Dismiss with Prejudice First Amended Complaint, dated July 13, 2009 (Dkt. 1) (Doc. 26).)  Atrium filed a Second Amended Complaint on August 3, 2009.  (Second Amended Complaint for Interpleader, dated Aug. 3, 2009 ("2d Am. Compl.") (Dkt. 1) (Doc. 30).)   Similar to its initial Interpleader Petition, the Second Amended Complaint stated that "Atrium is neutral to the dispute between UNITE and the SWRJB and neither has nor claims any interest of its own in the funds.  Atrium has at all times relevant to this action been willing to remit the funds to the labor organization entitled to them." (*Id.* at ¶¶ 34-35.)  Atrium also asked to be dismissed from the case with prejudice, "at the appropriate time." (*Id.* at ¶ 39(d).)

**C.**  **Transfer to this Court**

On September 9th, 2009, the federal district court in Texas denied Unite Here's motion to dismiss and transferred the matter to this Court, for possible consolidation with *Gillis, et al. v. Wilhelm, et al.*, 09 Civ. 01116, a case related to the internal dispute within Unite Here. (Order, dated Sept. 9, 2009 (Dkt. 1) (Doc. 60).)  The case was accepted by the Honorable

3

George B. Daniels, U.S.D.J., as related to *Gillis*.  (Notice of Case Assignment, dated Oct. 14, 2009 (Dkt. 10).)  At Atrium's request, the Court then entered an Order directing the Court's Clerk to deposit the disputed funds, which had originally been deposited by Atrium to the Dallas District Court, into an interest-bearing account.  (Order, dated Feb. 24, 2010 (Dkt. 21).)

D.     **Proposed Stipulation and Order of Dismissal**

The parties to *Gillis* settled, and, according to Unite Here, the resolution mooted Atrium's interpleader action.  (*See* Stipulation and Order of Dismissal (Ex. 1 to Declaration of Dana G. Weisbrod in Support of Plaintiff's Response to Defendants' Motion for Attorneys' Fees and Costs, dated Mar. 21, 2011 ("Weisbrod Decl.").[2])  On August 12, 2010, following a telephone conversation between counsel, Unite Here sent Atrium a proposed stipulation and order of dismissal.  (Weisbrod Decl. at ¶ 3.)  Under the terms of the proposed stipulation and order, SWRJB would relinquish any claim to the funds deposited by Atrium to the Court, the deposited funds would be paid solely to Unite Here, and all claims in the interpleader action would be dismissed with prejudice, with each party to bear its own costs and attorneys' fees. (Stipulation and Order of Dismissal (Ex. 1 to Weisbrod Decl.))

On the same day, Atrium sent an email response to Unite Here, requesting additional information related to the proposed stipulation.  (Email from Atrium to Unite Here, dated Aug. 12, 2010 (Ex. 2 to Weisbrod Decl).)  Specifically, Atrium requested clarification on the status of pending unfair labor petitions and representation petitions, confirmation that a new collective bargaining agreement negotiated between Atrium and Unite Here in May 2010 would

---

[2] The Weisbrod Declaration is attached as Exhibit A to Plaintiff Atrium Companies, Inc.'s Response to Defendants' Joint Motion for Attorneys' Fees and Costs, dated Mar. 21, 2011. (Dkt. 46.)

be honored, clarification on an issue of proper representation at Atrium, and information

regarding the status of the Unite Here pension plan.  (*Id.*)  Additionally, Atrium sought a copy of

the *Gillis* settlement agreement, requested a dismissal of a number of complaints of unfair labor

practices, a release of related claims, and fees and costs in connection with the interpleader

action.  (*Id.*)  Atrium did not receive a response to its email.  (Weisbrod Decl., ¶ 5.)

E.   **Defendants' Motion To Dismiss and Atrium's Motion for Discovery**

Defendants filed a joint motion to dismiss the action on October 14, 2010.  (*See*

Memorandum of Law in Support of Joint Motion to Dismiss, dated Oct. 14, 2010 (Dkt. 24).)

Defendants alleged that the global settlement reached in *Gillis* and other related cases mooted

this action because the Defendants had resolved their dispute regarding the proper recipient of

the union dues collected by Atrium.  (*Id.*)  Defendants asked the Court to order Atrium to pay to

Unite Here all funds deposited to the Court, any interest thereon, and all future membership

dues.  (*Id.* at 3.)  The Defendants also asked the Court to order "each party to bear its own cost,

including, without limitation, attorneys fees."  (*Id.* at 4.)

Following Defendants' motion to dismiss, Atrium filed a motion for discovery.  (Motion

for Discovery, dated Oct. 28, 2010 (Dkt. 25).)  Atrium sought documents related to the *Gillis*

settlement, alleging an impropriety in the way the settlement delegated union duties and

distributed dues.  (Memorandum of Law in Support of Motion for Discovery, dated Oct. 28,

2010 (Dkt. 26), at 4-7.)  Further, in its response to Defendants' motion to dismiss, Atrium stated

that the proposed stipulation and order directing payment to Unite Here would have been a

"subterfuge" for the ultimate assignment of those dues to SWRJB.  (Response to Joint Motion to

Dismiss, dated Oct. 28, 2010 (Dkt. 27), at 10.)  According to Atrium, Unite Here was "acting as

a 'transfer agent' for the remission of dues from Atrium's employees to a union [SWRJB] that

5

[was] not the statutory representative selected by Atrium's employees." (*Id.* at 16.) Atrium argued that if, pursuant to the proposed dismissal order, it were to pay the deposited funds to Unite Here, but the funds ultimately were to go to SWRJB, Atrium could face liability for breach of the collective bargaining agreements for remission of dues to an improperly designated party and for dealing with an entity that was not the employees' certified bargaining representative. (*Id.*) Atrium explained that the premise for its opposition to the joint motion to dismiss, as well as for its own motion for discovery, was the fear that complying with Defendants' proposed order would require Atrium to commit an unfair labor practice. Atrium also contended that the settlement reached between Defendants did not moot its interpleader action because the settlement did not address Atrium's claim for attorneys' fees and costs. (*Id.* at 19.)

Atrium proceeded to serve discovery requests on Defendants on October 29, 2010. (Declaration of Joel Silverstein, dated Nov. 3, 2010 ("Silverstein Decl.")[3] (Dkt. 29), ¶¶ 2, 3.) In January 2011, Atrium wrote to the Court and requested "a pre-motion conference in anticipation of filing a Motion to Compel" responses to those discovery requests. (Letter from Atrium to the Court, dated Jan. 13, 2011 (Dkt. 33).)

**F.    Dismissal of the Interpleader Action and
        Denial of Atrium's Motion for Discovery**

On January 25, 2011, Judge Daniels denied Atrium's motion for discovery. (Order, dated Jan. 25, 2011 (Dkt. 35).) Then, after a hearing on Defendants' joint motion to dismiss, the Court dismissed the interpleader action with prejudice. (Order, dated Feb. 18, 2011 (Dkt. 37).) The Court premised its dismissal Order on a ruling by the Division of Advice of the National

---

[3] Although the Silverstein Decl. is dated November 3, 2009, this is presumably a typographical error, as the Declaration was filed on November 3, 2010.

Labor Relations Board ("NLRB") that Unite Here had been and continued to be the Atrium employees' exclusive bargaining representative, and on the fact that the Defendants had settled their conflicting claims to union dues. (*Id.*)[4]  The Court ordered the clerk of the Court to issue a check to Unite Here in the amount of the deposited funds and any interest accrued thereon. (*Id.*)

## DISCUSSION

## I.   ATRIUM'S MOTION FOR ATTORNEYS' FEES

### A.   Applicable Legal Standards

Although there is no provision in either the Federal Interpleader Act or Rule 22 of the Federal Rules of Civil Procedure concerning the award of attorneys' fees or costs, the Court has discretion to allow a disinterested stakeholder to recover attorneys' fees and costs under traditional rules of equity.  *See Estate of Ellington v. EMI Music Publishing*, 282 F. Supp. 2d 192, 193 (S.D.N.Y. 2003)*;* 4 Moore's Federal Practice § 22.06 (3d ed. 2011).  The interpleading party may receive reasonable attorneys' fees and costs when that party is (1) a disinterested stakeholder, that (2) has conceded liability with respect to the deposited fund, (3) has deposited the disputed funds into the Court, and (4) has sought to be discharged from liability.  *Id.*  Courts typically award attorneys' fees and costs to disinterested stakeholders that meet these criteria. *Septembertide Publishing B.V. v. Stein and Day, Inc.*, 884 F.2d 675, 683 (2d Cir. 1989); *Locals*

---

[4] Specifically, the dismissal Order noted that the Division of Advice of the NLRB had "ruled on April 27, 2010 that UNITE HERE 'has been and continues to be the [Atrium employees'] exclusive collective bargaining representative,' [that] the Joint Board ha[d] withdrawn its appeal from that ruling, [that] there [was] no evidence of any subsequent contrary ruling by the NLRB, and [that] UNITE HERE and the Joint Board ha[d] settled their conflicting claims to union dues (the conflicting claims upon which this interpleader action was predicated), agreeing that all those dues (both those deposited with the Court and those hereafter collected by Atrium) should be paid to UNITE HERE." (Order, dated Feb. 18, 2011 (Dkt. 37).)

*40, 361 & 417 Pension Fund and Local 580 Pension Fund v. McInerney and McInerney*, No. 06
Civ. 5224 (JFK), 2007 U.S. Dist. LEXIS 1974, at *16 (S.D.N.Y. Jan. 9, 2007).

A stakeholder is "disinterested" if it does not itself claim entitlement to any of the
interpleaded funds. *See Klein v. Estates of Daniel Rhoades et al.*, No. 90 Civ. 6908 (SAS), 2000
U.S. Dist. LEXIS 8326, at *4 (S.D.N.Y. June 15, 2000) (finding stakeholders disinterested
because they did not claim any right to the subject settlement proceeds); *see also Pressman v.
Estate of Steinvorth, et al.,* 860 F. Supp. 171, 182 (S.D.N.Y. 1994). In *Pressman,* the
interpleader had a separate claim against the defendant estate for legal fees in earlier actions and
was himself a defendant in a counterclaim for an accounting. *Pressman,* 860 F. Supp. at 182
(S.D.N.Y. 1994). The court held that the interpleader's interest in monies separate from the
interpleaded funds did not make him an interested party in the interpleader action, and awarded
him attorneys' fees. *See id.* ("Regardless of [the interpleader's] interest in other matters
concerning the Steinvorth Estate, he has no claim to the monies interpleaded, and therefore is a
disinterested party as far as this interpleader action is concerned."). Further, a claim for
attorneys' fees does not transform an otherwise disinterested stakeholder into an interested
stakeholder. *See* 4 Moore's Federal Practice § 22.06 (3d ed. 2011).

Awards of attorneys' fees to disinterested stakeholders are generally modest because they
are limited to the fees and costs incurred in bringing the interpleader, typically a straightforward
procedure. *See Estate of Ellington v. EMI Music Publishing*, 282 F. Supp. 2d 192, 193
(S.D.N.Y. 2003)*;* 4 Moore's Federal Practice § 22.06 (3d ed. 2011). In determining the award,
courts consider the complexity of the case, the nature of the services performed by the
stakeholder for the claimants or the court, the stakeholder's good faith and diligence or lack
thereof, any benefit of the services to the stakeholder, and the claimants' or stakeholders' part, if

any, in improperly prolonging the proceeding.  *Id; see also Landmark Chemicals, SA. v. Merrill Lynch & Co., et al.*, 234 F.R.D. 62, 64 (S.D.N.Y. 2005).

While awards of costs and fees are "usual in the case of a disinterested stakeholder who concedes liability and deposits the stake," there are bases on which courts will deny fees and costs.  4 Moore's Federal Practice § 22.06 (3d ed. 2011).  Courts will generally deny fees and costs if the stakeholder has acted in bad faith or has delayed in commencing the interpleader action.  *Id.*  Some courts will also deny attorneys' fees to interpleading insurance companies because the costs of taking steps to deal with competing claims to insurance proceeds are seen to be part of an insurer's "normal course of business."  *See id.*

**B.**   **Atrium's Eligibility for Fees and Costs**

Atrium seeks the attorneys' fees and costs it incurred in prosecuting its interpleader action from April 2009, when it commenced the action in Texas, through February 2010, when this Court granted its request to have the interpleaded funds deposited into an interest-bearing account here.  Atrium does not seek attorneys' fees and costs associated with the NLRB proceedings or the fees and costs it incurred in this case, in filing its Rule 56(f) motion for discovery, responding to Defendants' joint motion to dismiss, pursuing discovery, or appearing for the Court hearing on the motion to dismiss.  Indeed, Atrium is not seeking reimbursement of any fees or costs incurred after the interpleaded funds were deposited in February 2010.  (*See generally* Memorandum of Law in Support of Plaintiff Atrium Companies Inc.'s Application for Attorneys' Fees and Costs, dated Mar. 7, 2011 ("Atrium Mem.") (Dkt. 44).)

Atrium does seek fees for (1) initiating the interpleader action in Dallas County Court, (2) repleading and responding to Unite Here's first and second motions to dismiss, and (3) taking preliminary steps to maintain the interpleader action before this Court upon the action's transfer

9

from the Northern District of Texas, including filing motions for its counsel to appear before this Court, attending the pre-trial conference, and taking steps to have the disputed funds deposited in this Court's registry.  (*Id.*, at 8.)  Atrium seeks a total of $57,343.05 in attorneys' fees[5] and $4,615.02 in costs.  (Hartsfield Decl., at 9.)  In total, Atrium seeks an award of $61,958.07.  *Id.*

### 1.    **Atrium Is a "Disinterested Stakeholder."**

As a threshold matter, Atrium meets the four criteria for awarding attorneys' fees and costs.[6]  First, despite Defendants' argument that, by engaging in motion practice and seeking discovery, Atrium "abandon[ed] any pretense that it is a disinterested stakeholder" (Defendant Unite Here's Memorandum of Law in Opposition to Plaintiff Atrium Companies, Inc.'s Application for Attorney's Fees and Costs, dated Mar. 21, 2011 ("Unite Here Opp. Mem.") (Dkt. 47), at 8), the question of whether a stakeholder should be considered "disinterested" for purposes of its eligibility for an attorneys' fee award is, as discussed above, determined by whether it claims entitlement to the interpleaded funds.  (*See supra* at 6-7; *see also Klein*, 2000 U.S. Dist. LEXIS 8326 at *4 (finding stakeholders disinterested because they did not claim any right to the subject settlement proceeds); *Pressman*, 860 F. Supp. at 182 (determining stakeholder to be disinterested and awarding attorney fees even though the stakeholder was interested in matters collateral to the interpleaded fund).)  Here, Atrium makes no claim to the

---

[5] This figure is based on the rates charged to the client, which apparently received a 10% discount from counsel's usual rates.  (Declaration of Dan Hartsfield in Support of Plaintiff's Application For Attorneys' Fees and Costs ("Hartsfield Decl."), filed Mar. 7, 2011 (Dkt. 45), at 9; *see also* Ex. 1 to Hartsfield Decl.)

[6] As set out above, an interpleading party may receive reasonable attorneys' fees and costs when that party is (1) a disinterested stakeholder, that (2) has conceded liability with respect to the deposited fund, (3) has deposited the disputed funds into the Court, and (4) has sought to be discharged from liability.  (*See supra* at 7.)

funds it deposited into the Court, nor does it seek to recover any fees or costs related to its involvement in this litigation, in any way, after the date of that deposit.  (*See* Atrium Mem., at 4, n.3.)  Hence, Atrium is properly considered a disinterested stakeholder.

Second, Atrium has conceded liability with respect to the deposited funds, stating in its Second Amended Complaint that it is "neutral to the dispute between UNITE and the SWRJB and neither has nor claims any interest of its own in the funds.  Atrium has at all times relevant to this action been willing to remit the funds to the labor organization entitled to them."  (2d Am. Compl., at ¶¶ 34-35.)  Third, Atrium duly deposited the disputed funds into the Dallas District Court, then, upon removal of the action, into the Northern District of Texas Court, and finally, upon transfer of the case, into this Court.  (*See id.; see also* Order For Deposit of Funds in Interest Bearing Account, dated Feb. 24, 2010 (Dkt. 21).)  Finally, Atrium has sought to be discharged from liability.  In its Second Amended Complaint, Atrium asked to be dismissed with prejudice from the case, "at the appropriate time."  (2d Am. Compl., at ¶ 39(d).)[7]

With the exception of challenging Atrium's status as a "disinterested stakeholder," Defendants do not contest the other aspects of Atrium's eligibility for fees and costs.  Instead, they seem to argue that, even if Atrium may have originally been eligible for fees and costs, it should not now receive such an award because, *after* it deposited the disputed funds with this Court, it engaged in behavior that prolonged the litigation and amounted to "bad faith."  In fact, Defendants make their own application for attorneys' fees and costs, which will be discussed below, based on these allegations of bad faith.

---

[7]  Apparently, on February 15, 2011, Atrium also submitted a proposed order to Judge Daniels, seeking dismissal of the interpleader action with prejudice.  (*See* Atrium Mem., at 7.)

## 2.     Atrium's Actions Do Not Rise to the Level of "Bad Faith."

As Atrium meets the criteria for an award of attorneys' fees and costs, it should receive a reasonable award, absent a showing of bad faith. The major thrust of Defendants' bad faith argument is that Atrium filed an interpleader action that was never necessary and then purposely delayed its resolution. Defendants claim that "[o]f hundreds of similarly situated employers, Atrium alone filed and pressed an interpleader action over the defendant union's conflicting claims to dues." (Unite Here Opp. Mem., at 3; *see also id*. (arguing that "Atrium was just one of *hundreds* of employers at the center of the controversy about which union was entitled to dues payments deducted by such employers from their employees' paychecks").) This statement, however, effectively confirms that there was indeed a conflict over the funds, created by Defendants and sufficient to form the basis of the interpleader action. That others did not similarly pursue interpleader claims does not establish any bad faith on Atrium's part.[8]

Along the same lines, Defendants argue that "[t]he defendant unions never, in fact, sued Atrium or any [*sic*] the hundreds of similarly situated employers over dues." (*Id.* at 11.) Yet the fact that Atrium was never sued by any union over the funds also does not show that Atrium filed the interpleader action in bad faith. Indeed, it is possible that the unions never sued Atrium because Atrium had filed its interpleader action.[9]

---

[8] The Court also notes that one other party apparently did file an interpleader action, but, according to Unite Here, voluntarily dismissed the action without any litigation. (*See id.* at 4.)

[9] Similarly, while Defendants' argue that the interpleader did not contribute to the resolution of the Defendants' competing claims to the dues at issue in this case (United Here Opp. Mem., at 6), this statement is unsupported, and it may be that the filing of the interpleader action did play some role, even if a minor one, in pressing the competing factions of Unite Here to resolve their differences.

In further support of their argument that the interpleader must have been filed in bad faith because it was unnecessary, Defendants invoke the indemnification provisions of the collective bargaining agreements and argue that Atrium could have relied on these provisions to avoid "double liability." (*Id.* at 5-6.) Defendants also suggest that Atrium could have avoided the burden and expense of the interpleader suit by simply placing the disputed funds in an escrow account. (*Id.* at 6.) Yet in the context of the protracted and extensive litigation history between the Defendants and related entities, Atrium's resort to an interpleader action, as opposed to its potential reliance on an indemnification provision in a contract or its depositing of funds into an escrow account, does not amount to "bad faith."

To support their argument that Atrium acted in bad faith to delay this action's resolution, Defendants contend that "from the inception of this interpleader action, Atrium has churned it in order to delay its resolution and maximize the cost and burden it has imposed on the defendant unions." (Unite Here Opp. Mem., at 7.) The Court notes, however, that it was defendant Unite Here who removed the interpleader action to federal court and then filed two motions to dismiss, before the case was transferred to this district. The Court evaluates *both* the stakeholder's and claimants' parts, if any, in improperly prolonging an interpleader proceeding. (*See supra* at 8-9.) Here, both parties to this interpleader appear to have contributed to the burden and expense of resolving this action. Although Defendants blame Atrium for requiring Unite Here to remove the action from state court and to file multiple motions to dismiss Atrium's faulty interpleader claim (*see id.* ("Given the experience, expertise, and reputations of Atrium's counsel in such matters, it is hard to imagine that Atrium's apparently bumbling efforts at the inception of the case to state a claim and choose a sensible venue reflected inadvertence, as opposed to implementation of Atrium's stratagem to churn and prolong the case in order to dissipate and delay the union's

13

receipt of the dues Atrium sought to withhold")), the Court notes that the federal court in the

Northern District of Texas *denied* Unite Here's July 13, 2009 motion to dismiss.[10]

Finally, the Court notes that the only three cases cited by Defendants to support their

claim that Atrium is not entitled to attorneys' fees are inapposite.  In *Merrimack Mfg. Co. v.*

*Bergman*, 154 F. Supp. 688 (S.D.N.Y. 1957) (cited in Unite Here Opp. Mem., at 10), the court

denied attorneys' fees to a stakeholder who told multiple claimants that he was holding the

disputed goods in their accounts.  *Id.* at 691.  Atrium generated no such confusion, nor has it

been alleged, as in *Merrimack*, that Atrium contributed to the underlying dispute over the funds.

The other two cases on which Defendants rely – *John Hancock Mutual Life Insurance*

*Co. v. Doran*, 138 F. Supp. 47 (S.D.N.Y. 1956) (cited in Unite Here Opp. Mem, at 9), and

*Companion Life Ins. Co. v. Schaffer,* 442 F. Supp. 826 (S.D.N.Y. 1977) (cited in Unite Here

Opp. Mem., at 10) – both involved interpleaders that were insurance companies.  Moreover, in

*John Hancock*, the insurer had delayed substantially in commencing the action, making use of

the funds at issue for over a year after becoming aware of competing claims.  *See John Hancock,*

138 F. Supp. at 50.  In denying a fee award, the court also found that the action "[did] not appear

to be one where the complainant could not have ascertained to whom the insurance was payable

by the use of ordinary diligence."  *Id.* at 49.  Rather, the court saw the insurance company's

conduct as "a resort to equity as a convenient escape from duty."  *Id.*   In *Companion*, the Court

deferred its decision on the issue of attorneys' fees and costs because "the plaintiff insurance

---

[10] Defendants also argue that Atrium initially filed in Texas state court, when "Atrium's state and federal pleadings in Texas all recognized that the underlying dispute between the defendant unions would be resolved in *Gillis v. Wilhelm* and related cases pending before *this Court.*"  (*Id.*)  If, however, it was so obvious that the interpleader action belonged in the Southern District of New York, then Unite Here could have moved to transfer venue when it removed the case to federal court.

company may have been responsible in part for th[e] litigation" and because "[c]onflicting claims to the proceeds of a [life insurance] policy are inevitable and normal risks of the insurance business." *Companion*, 422 F. Supp. at 830. The Court held that this type of "cost of doing business [for an insurer] should not be transferred by invoking interpleader." *Id.* In this case, though, Atrium is not an insurance company; it did not contribute to the underlying dispute over the funds; it did not delay in filing the interpleader action; and its normal business risks presumably did not include dealing with conflicting claims to the dues of its union workers.

None of the factors that led the courts in the cited cases to deny fee awards are present here, and, overall, Defendants have not provided any persuasive reason why fees and costs should not be awarded to Atrium. As Atrium satisfies the criteria for a fee award, and as Defendants have not adequately demonstrated that Atrium filed its interpleader action in bad faith, I recommend that its motion for fees and costs – up to the date that it deposited the disputed funds into this Court – be granted.

### C. Calculation of Fees and Costs

As noted above, Atrium seeks fees and costs associated with (1) initiating the interpleader action in Dallas County Court, (2) repleading and responding to Unite Here's first and second motions to dismiss, and (3) taking preliminary steps to maintain the interpleader action before this Court. Atrium breaks down its fee request as follows:

| Timekeeper | Total Hours | Billable Rate/Hour | Fees | Requested Fees (10% client discount) |
|---|---|---|---|---|
| Dan G. Hartsfield, Partner (Dallas) | 48.0 | $450 | $21,600.00 | $19,440.00 |
| Karen E. Griffin, Partner (Dallas) | 18.3 | $375 | $6,862.50 | $6,176.25 |
| Dana L. Glick Weisbrod, Associate (NY) | 26.6 | $365-$380 | $9,784.00 | $8,805.60 |
| E. Cynthia Uduebor, Associate (Dallas) | 80.8 | $295-$350 | $23,862.00 | $21,475.80 |
| Aya Asano, Information Specialist (NY) | .2 | $245 | $49.00 | $44.10 |
| Tracey B. Lambert, Paralegal (NY) | 5.8 | $235-$240 | $1368.00 | $1,231.20 |
| Sharon V. Mersiovsky, Paralegal (Dallas) | 1.4 | $135 | $189.00 | $170.10 |

Total Attorneys' Fees Requested:   $57,343.05
Total Costs Requested:   $ 4,615.02
**Total Attorneys' Fees and Costs Requested:   $61,958.07**

(Atrium Mem., at 4.)

   1. **Attorneys' Fees**

   The Court has discretion to determine the amount of attorneys' fees that would be

appropriate to satisfy a fee award. *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).  In

determining appropriate fees, the Court begins by multiplying an attorney's reasonable hours by

a reasonable hourly rate for the services performed, so as to determine a "presumptively

reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 493

F.3d 110, 118-21 (2d Cir. 2007).  The party seeking fees bears the burden of demonstrating that

its requested fees are reasonable. *See Blum v. Stenson,* 465 U.S. 886, 897 (1984); *Robinson v.

City of New York*, No. 05 Civ. 9545 (GEL), 2009 U.S. Dist. LEXIS 89981, at *8 (S.D.N.Y.

Sept. 29, 2009).  To that end, the fee application must be supported by contemporaneous time records that "specify, for each attorney, the date, the hours expended, and the nature of the work done."  *N.Y. State Ass'n for Retarded Children v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983).

### a.   Hourly Rates

An attorney's hourly rate is considered reasonable when it is "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," *Blum*, 465 U.S. at 895 n.11, and when it comports with what "a paying client would be willing to pay" in that community, *Arbor Hill*, 493 F.3d at 117-18. Although the fee applicant has the burden of demonstrating prevailing market rates for comparable work, *see Broome v. Biondi*, 17 F. Supp. 2d 230, 237 (S.D.N.Y. 1997), the Court may also apply its "own knowledge" of rates charged in the community in assessing the reasonableness of the rates sought, *Miele v. N.Y. State Teamsters Conference Pension & Ret.,* 831 F.2d 407, 409 (2d Cir. 1987).  The Court has ample discretion to determine whether the hourly rates that a party requests for its attorneys is reasonable.  *See Miele*, 831 F.2d at 409 (holding that court may rely on its own knowledge of prevailing rates in community to determine reasonable hourly rates); *Jones v. Amalgamated Warbasse Houses, Inc.*, 721 F.2d 881, 885 (2d Cir. 1983) (holding that court may look to other recent decisions to determine reasonable hourly rates).

Here, lead counsel for Atrium, Dan G. Hartsfield, Esq. ("Hartsfield") is a partner in a Dallas law firm and has been practicing employment law on a national basis for more than 25 years.  (*See* Hartsfield Decl., at ¶ 4.)  Karen E. Griffin, Esq. ("Griffin"), also a partner in the Dallas office, has been practicing labor and employment law for over 10 years.  (*Id.* at ¶ 8.) Atrium was charged $450 per hour for Harstfield's time and $375 per hour for Griffin's time,

17

less a 10% client discount (effectively reducing these rates to $405 and $337.50/hour,

respectively).  (*Id.* at ¶¶ 6, 8, 14.)  Defendants do not dispute the reasonableness of the billing

rates charged for either Hartsfield or Griffin, and, given their level of experience, the nature of

the services performed, and past findings of the Northern District of Texas regarding market

rates in its community, this Court finds the billing rates of both of these attorneys to have been

reasonable.  *See, e.g.*, *Nassar v. University of Texas Southwestern Medical Center,* No.

3:08-CV-1337-B, 2010 U.S. Dist. LEXIS 76711, at *15-17 (N.D. Tex. July 27, 2010) (in

employment action, partners' billing rates from $400-$750 per hour were reasonable); *Sapp v.

Snuffer's Restaurants, Inc.,* No. 3:07-CV-273-M, 2010 U.S. Dist. LEXIS 142172, at *17 (N.D.

Tex. Nov. 23, 2010) (Report & Recommendation) (in ADA action, fees of $400 per hour and

$350 per hour were reasonable for experienced counsel), *adopted in relevant part by* No.

3:07-CV-273-M 2011 U.S. Dist. LEXIS 28791 (N.D. Tex. Mar. 21, 2011) (accepting Report &

Recommendation, but making a modest reduction based on two unclear time entries).

Associates E. Cynthia Uduebor, Esq. ("Uduebor"), an associate in Dallas who has been

practicing since 2004, and Dana L. Glick Weisbrod, Esq. ("Weisbrod"), an associate in New

York who has been practicing since 2007, also worked on this matter for Atrium.  (*See* Hartsfield

Decl., at ¶¶ 9,10.)  Given Uduebor's several years of experience, the nature of the services she

performed, and the local market in Texas, this Court also finds her billing rates ($295 per hour in

2009, and $305 per hour in 2010, effectively reduced to $265.50 and $274.50/hour by the 10%

client discount (*id.* at ¶¶ 10, 14) to have been reasonable.  *See, e.g., Merrick v. Michael J. Scott,

P.C.*, No. 3:10-CV-2172-D, 2011 U.S. Dist. LEXIS 54756, at *30 (N.D. Tex. May 20, 2011)

(finding $290 per hour to be a reasonable rate for a sixth-year associate practicing consumer law

in the Dallas community).[11]  While on the high side of the billing rates that have generally been accepted by this Court for junior associates in the New York City market, Weisbrod's billing rates ($365 per hour in 2009, and $380 per hour in 2010, effectively reduced by the 10% client discount to $328.50 and $342 per hour (*see* Hartsfield Decl., at ¶¶ 9,14)) were also within a reasonable range.  *See, e.g., Mugavero v. Arms Acres, Inc.*, No. 03 Civ. 05724 (PGG), 2010 WL 451045, at *5 (S.D.N.Y. Feb. 9, 2010) (slip opinion) (noting that, in the Southern District of New York, "'rates for associates have ranged from $200 to $350, with average awards increasing over time.'" (quoting *Vilkhu v. City of New York*, No. 06 Civ. 2095 (CPS), 2009 WL 1851019, at *4 (E.D.N.Y. June 26, 2009)); *see also Miele*, 831 F.2d at 409 (holding that court may rely on its own knowledge of prevailing rates in community to determine reasonable hourly rates).  In any event, Defendants do not challenge the reasonableness of either Uduebor's or Weisbrod's billing rates.

Finally, the rates charged by Aya Asano, an information specialist in New York, Tracey B. Lambert, a paralegal in New York, and Sharon V. Mersiovsky, a paralegal in Dallas (*see* Hartsfield Decl., at ¶¶ 11, 12, 13, 14), all appear to have been reasonable, and the Court notes, once again, that Defendants have not disputed the reasonableness of the stated billing rates for these individuals.  *See Miele*, 831 F.2d at 409.

---

[11] *See also* the Texas State Bar's "Hourly Rates in 2009 Report," http://www.texasbar.com/AM/Template.cfm?Section=Research_and_Analysis&Template=/CM/ContentDisplay.cfm&ContentID=11240 (the most recent such report), stating that the 2009 median hourly rate in Dallas/Forth Worth/Arlington for Labor & Employment attorneys, was $258 per hour.

b.     **Reasonable Hours**

The Court has reviewed the time records submitted by Atrium and finds the time expended by its attorneys and other legal professionals was generally reasonable under the circumstances.  Although $57,343.05 in attorneys' fees for an interpleader action may seem high, this was not a straightforward interpleader action.  After filing its initial interpleader petition in Texas state court, Atrium was required to replead and respond to the two motions to dismiss filed by Unite Here.  Upon the case's transfer to this Court, Atrium was required to take additional steps to maintain its interpleader action here.  Furthermore, although Defendants oppose Atrium's request for fees and costs in principle, Defendants do not challenge the reasonableness of the time spent by Atrium's counsel on specific tasks.

Nonetheless, this Court recommends deducting from any fee award the fees charged for the work performed by Uduebor (1 hour) and Weisbrod (3 hours), in apparently addressing how an Atrium bankruptcy issue would affect the interpleader action.  (*See* Ex. 1 to Hartsfield Decl. at 35.)  As a matter of equity, the Court would not recommend that the Defendants pay for Atrium's research regarding its own bankruptcy issues.

Additionally, the requested fees should be reduced for the instances in which Atrium's attorneys did not describe the nature of their work with enough specificity to enable the Court to determine whether the time spent was appropriate or excessive.  In particular, while some of counsel's time entries regarding legal research specify the nature of the research performed,[12] a number of entries merely state "Research interpleader issues," or "Researching and drafting

---

[12] *See, e.g.*, time entries dated Apr. 13, 1009 ("Research primary jurisdiction arguments anticipated by UNITE"); Nov. 10, 2009 ("Research regarding interpleader actions pertaining to union dues; research regarding procedural issues related to interpleader").

response to motion to dismiss."[13]  These types of time entries are inadequate to enable the Court

to determine what issues, in particular, Atrium's attorneys were researching, much less whether

the expended time was reasonable for the work performed.  *See, e.g., Clarendon Nat'l Ins. Co. v.

Compuplan, LLC*, No. 03 Civ. 7966 (LAP) (KNF), 2006 U.S. Dist. LEXIS 88161, at *20

(S.D.N.Y. Dec. 5, 2006) (time entries such as "legal research" failed to describe adequately the

work performed); *Vishipco Line v. Charles Schwab & Co.,* Nos. 02 Civ. 7823, 7846, 7877, 7915,

7928, 7929 (SHS), 2003 WL 1936142, at * 2 (S.D.N.Y. Apr. 23, 2003) (time entries such as

"legal research" too vague to allow court to determine reasonableness of time expended);

*Shannon v. Fireman's Fund Ins. Co.*, 156 F. Supp. 2d 279, 301 (S.D.N.Y. 2001) (time entries

such as "legal research," which do not indicate the subject matter of the work performed, "do not

permit a thorough evaluation"); *TM Park Ave. Assocs. v. Pataki*, 44 F. Supp. 2d 158, 169

(S.D.N.Y. 1999) (time entries "are not sufficiently detailed" where they "merely state

'research'"), *vacated on other grounds*, 214 F.3d 344 (2d Cir. 2000); *Local 32B-32J v. Port

Auth.*, 180 F.R.D. 251, 253 (S.D.N.Y. 1998) (time entries indicating "research" were inadequate

where there was "no indication of what topics were researched").

Most typically, when submitted time records do not provide descriptions sufficiently

detailed to enable the Court to determine the reasonableness of the expended time, courts in this

Circuit have applied a percentage reduction – frequently in the range of 20 to 30 percent – to the

claimed attorney hours, or at least the hours at issue.  *See, e.g., Kirsch*, 148 F.3d at 173

(affirming 20% fee reduction for vagueness and other deficiencies in attorney billing records);

---

[13] *See, e.g.*, entries dated Apr. 7, 2009 ("Researching and drafting petition in
interpleader"); Apr. 9, 2009 ("Research interpleader issues"); July 20, 2009 ("Researching and
drafting response to motion to dismiss").

*Terminate Control Corp. v. Nu-Life Constr. Corp.,* 28 F.3d 1335, 1342-43 (2d Cir. 1994) (30%

fee reduction for "lack of specific record keeping" was within the district court's discretion); *see*

*also Trs. of the Bricklayers and Allied Craftworkers Local 5 N.Y. Ret., Welfare and Training*

*Funds v. Helmer-Cronin Constr.*, *Inc.*, No. 03 Civ. 0748 (MDF), 2005 U.S. Dist. LEXIS 40165,

at *15-16 (S.D.N.Y. Oct. 24, 2005) (20% reduction for vague entries that "fail to adequately

describe the nature of the work performed"); *Mr. & Mrs. B. v. Weston Bd. of Educ.*, 34 F. Supp.

2d 777, 782 (D. Conn. 1999) (30% reduction where vague and compound time entries did not

permit the court to determine the reasonableness of the time expended).  In keeping with this

authority, but recognizing that only certain of counsel's time entries are deficient in this way,

I recommend a reduction of 20 percent for the each of the time entries that include references to

"research" without any particularized description of the nature of that research – specifically:

for Griffin, entries dated Apr. 9, and 10, 2009, and for Uduebor, entries dated

Apr. 7, 8, and 13, 2009; July 20, 21, and 22, 2009; and Aug. 2, and 3, 2009.

Applying the recommended reductions to Atrium's requested attorneys' fees yields the

following:

|  |  |
|---|---|
| Requested Fees: | $57,343.05 |
| Deduction of time spent on bankruptcy issue[14]: | – $  1,300.50 |
| 20% reduction applied to vague time entries[15]: | – $  3,294.54 |
| **Recommended fee award:** | **$52,748.01** |

### 2.  Costs

Atrium also seeks reimbursement for costs expended during this interpleader action. "'Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients.'" *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (quoting *United States Football League v. National Football League*, 887 F.2d 408, 416 (2d Cir. 1989)).  Expenses including photocopying, research, and telephone costs "are the sort of expenses that may ordinarily be recovered" as part of a fee award, and need not be treated as "overhead expenses." *LeBlanc-Sternberg*, 143 F.3d at 763 (citing cases); *see also Gateway Bank, F.S.B. v. Ideal Mortg. Bankers, Ltd.*, CV 10-334 (JS) (ETB), 2010 U.S. Dist. LEXIS 92135, at *14-15 (E.D.N.Y. June 8, 2010) ("costs for photocopying, telephone calls, legal research, filing fees, service of process, postage, and air courier services . . . are routinely recoverable" as part of a fee award (citing cases)), *adopted by* 2010 U.S. Dist. LEXIS 82097 (E.D.N.Y. Aug. 12, 2010).  The Court has reviewed the costs sought to be recovered by Atrium and finds them to be reasonable; furthermore, Defendants do not oppose the reasonableness of

---

[14] This work was performed in 2010 by Uduebor (1 hour x $305/hour = $305.00) and Weisbrod (3 hours x $380/hour = $1140.00), for a total value of $1,445.00.  Less the 10% client discount, the amount billed for this work was $1,300.50.

[15] The time entries in question (*see supra* at 20-22) relate to work performed by Griffin (6.8 hours x $375/hour = $2,550.00) and Uduebor (53.4 hours x $295/hour = $15,753.00), for a total value of $18,303.00.  Less the 10% client discount, the amount billed for this work was $16,472.70.  A reduction of 20% of this amount would equal a reduction of $3,294.54.

any of these costs.  Under the circumstances, the Court recommends a cost award to Atrium in the amount it requested, $4,615.02.

In total, after subtracting certain fees, as discussed above, this Court recommends a total fee and cost award of $57,363.03 ($52,748.01 in fees, as set out above, plus $4,615.02 in costs). Although, in an interpleader action, costs and attorneys' fees are generally awarded against the interpleaded fund, *see* 4 Moore's Federal Practice § 22.06 (3d ed. 2011), "the court has the discretion to tax them against a party whose behavior justifies it," *id.*  Here, as discussed above, Defendants were responsible for creating much of the cost of this interpleader action, up to the date when Atrium deposited the funds into this Court.  Additionally, the Court notes that the funds at issue in this case have already been distributed to Unite Here.  (*See* Order, dated Feb. 17, 2011 (Dkt. 37).)  Under these circumstances, Defendants should be ordered to satisfy the award in this case, although the Court recommends that Unite Here be required to pay 75 percent of the award ($43,022.27), and that SWRJB be required to pay the remaining 25 percent ($14,340.76).  While both parties created the dispute over the funds that compelled Atrium to file the interpleader action, Unite Here's motion practice, in particular, prolonged the proceeding and contributed to Atrium's fees and costs.

## II.    DEFENDANTS' JOINT MOTION FOR ATTORNEYS' FEES AND COSTS

### A.    Applicable Legal Standards

#### 1.    Costs and Fees under Section 1927

Under 28 U.S.C. § 1927, an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  28 U.S.C. § 1927.

24

The statute "imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics." *International Board of Teamsters, Chauffeurs, Warehousesmen and Helpers of America, AFL-CIO*, 948 F.2d 1338, 1344 (2d Cir. 1991).

An award under Section 1927 turns on counsel's bad faith. *See Bowler v. U.S. Immigration and Naturalization Service*, 901 F. Supp. 597, 604 (1995 S.D.N.Y.) ("Bad faith is the touchstone of an award under this statute."). Moreover, Section 1927 requires a showing of *subjective* bad faith by counsel. *International Brotherhood of Teamsters*, 948 F.2d at 1346; *MacDraw, Inc. v. CIT Group Equip. Financing, Inc.*, 73 F.3d 1253, 1262 (2d Cir. 1996); *Advanced Magnetic Closures, Inc. v. Rome Fasterner Corp.*, 607 F.3d 817, 833 (2d Cir. 2010) (holding that 28 U.S.C. § 1927 requires subjective bad faith of counsel, not objective unreasonableness). Subjective "bad faith," as required for the imposition of sanctions under Section 1927, *see MacDraw, Inc. v. CIT Group Equip. Financing, Inc.*, 73 F.3d 1253, 1262 (2d Cir. 1996), may be found in a variety of circumstances, as where, for example, an attorney's conduct results in extended and unnecessary motion practice, *see Apex Oil Co. v. Belcher Co. of N.Y.*, 855 F.2d 1009, 1020 (2d Cir. 1988) (noting that counsel's "failure to confer in good faith over discovery disputes in violation of a local rule," which resulted in unnecessary motion practice, had "clearly 'multiplie[d] the proceedings . . . unreasonably and vexatiously,' and Section 1927 thus provide[d] ample authority for sanctions").

The Second Circuit requires "clear evidence," however, that (1) the challenged actions by counsel were entirely without color; and (2) they were brought in bad faith. *See id.* (internal citations omitted); *see also Advanced Magnetic Closures, Inc. v. Rome Fasterner Corp.*, 607 F.3d 817, 833 (2d Cir. 2010); *Eisemann v. Green*, 204 F.3d 393, 396 (2d Cir. 2000); *International Brotherhood of Teamsters*, 948 F.2d at 1347.

25

> The Second Circuit has established strict requirements for both the colorless claim and bad-faith requirements. A claim is entirely without color when it lacks any legal or factual basis. For a finding of bad faith, the Second Circuit requires a high degree of specificity in the factual findings. A court may only infer bad faith if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.

*Advanced Magnetic Closures*, 607 F.3d at 833.

### 2. Costs and Fees Pursuant to the Court's Inherent Authority

A court's inherent authority to award attorneys' fees and costs derives from "a court's need to manage its affairs so as to achieve an orderly and expeditious resolution of cases." *Bowler*, 901 F. Supp. at 605. Attorneys' fees may be imposed if a party has continued an action "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Id.* (internal citations omitted). The Second Circuit has reasoned that sanctions under the court's inherent authority, like those permitted under Section 1927, should be based on findings that the offending party has asserted colorless claims and has acted in bad faith. *See Eisemann v. Green*, 204 F.3d at 396.[16]

### B. Atrium's Actions Do Not Amount to Bad Faith.

Defendants allege that Atrium used the interpleader action "to accomplish ulterior, labor relations objectives – most notably, depletion, and delaying the distribution to Unite Here of the over $230,000 in union dues" held in the Court's registry. (*See* Memorandum of Law in Support of Defendants' Joint Motion for Attorney's Fees and Costs, dated Mar. 04, 2011 (Dkt. 39) at 5.)

---

[16] "To ensure . . . that fear of an award of attorneys' fees against them will not deter persons with colorable claims from pursuing those claims, we have declined to uphold awards under the bad-faith exception absent both clear evidence that the challenged actions are entirely without color, and are taken for reasons of harassment or delay or for other improper purposes and a high degree of specificity in the factual findings of the lower courts." *Eisemann v. Green*, 204 F.3d at 396 (quoting *Dow Chem. Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 344 (2d Cir.1986) (emphasis added) (internal citations, quotation marks, and brackets omitted).

Specifically, Defendants complain that, after August 2010, (1) Atrium requested "unreasonable preconditions" to executing a stipulation of dismissal of the action; (2) Atrium opposed Defendants' joint motion to dismiss; (3) Atrium filed a separate Rule 56(f) motion for discovery and asked the Court to delay briefing and resolution of the joint motion to dismiss pending completion of the requested discovery; (4) Atrium served discovery requests on Defendants; and (5) Atrium wrote to the Court in January 2011 requesting "a pre-motion conference in anticipation of filing a Motion to Compel" responses to its discovery requests. (*Id.* at 3-4.) Defendants argue that these actions, in the context of an interpleader action, were "entirely without color." (*See* Reply Memorandum of Law in Support of Defendants' Joint Motion for Attorney's Fees and Costs, dated March 28, 2011 (Dkt. 50) at 2-3.) Defendants seek $56,089.42 in fees and costs spent pursuing and/or defending these matters, which Defendants claim were beyond the scope of the interpleader. (*Id.* at 8.)

Having reviewed the underlying papers and the parties' submissions on Defendants' motion for fees and costs, this Court does not find that Atrium's actions were "so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *See Advanced Magnetic Closures*, 607 F.3d at 833. In August 2010, after the Defendants proposed a stipulation of dismissal, Atrium's actions were apparently rooted in its desire to protect itself against future liability. Specifically, Atrium's actions were plausibly tied to shielding itself from potential multiple liability for the same interpleaded funds, being held in violation of collective bargaining agreements, or being held in violation of the NLRA for remitting funds to an entity that, in Atrium's view, was not authorized to receive the funds. (*See* Weisbrod Decl., at ¶ 4; Ex. 2.) Although Atrium's discovery requests and other demands were arguably outside the scope of a typical interpleader action, Defendants do not

27

provide "clear evidence" that Atrium's claims were either entirely without color, or brought in bad faith, for an improper purpose. *See Eisemann v. Green*, 204 F.3d at 396. Accordingly, I recommend that Defendants' sanctions motion be denied, both under Section 1927 and the Court's inherent authority to sanction litigation abuses.

## CONCLUSION

For the reasons set forth above, I recommend that Atrium's motion for attorneys' fees and costs (Dkt. 43) be granted, that fees and costs be awarded to Atrium in the amount of $57,363.03, and that, of this sum, defendant Unite Here be required to pay $43,022.27 (75%), and defendant SWRJB be required to pay $14,340.76 (25%). I further recommend that Defendants' joint motion for attorneys' fees (Dkt. 38) be denied.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable George B. Daniels, United States Courthouse, 500 Pearl Street, Room 630, New York, New York 10007, and to the chambers of the undersigned, United States Courthouse, 500 Pearl Street, Room 525, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Daniels. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968

F.2d 298, 300 (2d Cir. 1992); *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988);

*McCarthy v. Manson*, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York
       July 21, 2011

                                        Respectfully submitted,


                                        DEBRA FREEMAN
                                        United States Magistrate Judge


Copies To:

The Honorable George B. Daniels

All parties (via ECF)